UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| CONNIE RAYBOURN, | ) |
| Plaintiff, | ) |
| v. | ) No. 2:16CV10 PLC |
| HARI S. KAPUR, et al., | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Before the Court is plaintiff Connie Raybourn's first amended complaint. After reviewing the first amended complaint, the Court will order the Clerk to issue process or cause process to be issued on the amended complaint.

## 28 U.S.C. § 1915(e)

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court may dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. An action is frivolous if "it lacks an arguable basis in either law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).

In reviewing a pro se complaint under § 1915(e)(2)(B), the Court must give the complaint the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The Court must also weigh all factual allegations in favor of the plaintiff, unless the facts alleged are clearly baseless. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950-51 (2009). These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Id.* at 1949. Second, the Court must determine whether the complaint states a plausible claim for relief. *Id.* at 1950-51. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." *Id.* The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951. When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's proffered conclusion is the most plausible or whether it is more likely that no misconduct occurred. *Id.* at 1950, 1951-52.

**The First Amended Complaint**

Plaintiff, Connie Raybourn, an inmate at the Women's Eastern Reception, Diagnostic Correctional Center ("WERDCC"), brings this action pursuant to 42 U.S.C. § 1983 alleging violations of her civil rights. Plaintiff is represented by appointed counsel in this matter. Named as defendants in plaintiff's first amended complaint are: Corizon Health Inc., doing business as Corizon Medical Services, Inc. ("CMS"); Haris Kapur (Doctor, Former Medical Director at WERDCC, employed by CMS); Justin Jones (Current Medical Director, employed by CMS); Thomas Bredeman (Doctor of Osteopathy, Associate Regional Medical Director for WERDCC, employee of CMS); Carl Doerhoff (Surgeon at Surgicare of Missouri, contract physician of CMS); William Rice (Doctor, employed by CMS); Marilyn Hubert (Health Services Administrator at WERDCC, employee of CMS); Susan Woodrow (Correctional Officer,

employee of the Missouri Department of Corrections ("MDOC"). Defendants are named in the official and individual capacities.

Plaintiff asserts that in 2012 she turned fifty (50) years-old and had chronic complaints of bowel irregularities, with a medical history of gastric bypass. Plaintiff asserts that despite requesting a colonoscopy for three straight years, defendants Kapur, Bredeman, Jones and Rice denied her the screening test. Plaintiff asserts that they denied the test despite her age, medical complications, and a sign posted in the infirmary encouraging prisoners to schedule a colonoscopy if they were over the age of fifty (50). **(Count I)**

On February 18, 2014, plaintiff presented to the infirmary complaining of an inability to have a bowel movement, nausea, vomiting and pain in her abdomen. Plaintiff underwent an x-ray, which showed some indication of a bowel obstruction. Plaintiff asserts that although defendant Kapur read the x-ray findings, he did not send her for further medical assistance outside of the prison immediately, but instead gave her laxatives and medication for nausea which did not improve her symptoms. Plaintiff alleges that her symptoms continued to worsen for seven more days while defendant Kapur continued to treat her with laxatives only. Plaintiff asserts that, on February 26, 2014, a nurse saw her vomit fecal material into a cup, and after that time, and repeat x-rays, defendant Kapur finally transferred plaintiff to Audrain Medical Center with a diagnosis of bowel obstruction. At the Medical Center, plaintiff had a CT scan, which revealed that she had colon cancer. This necessitated removal of 7.5 cm of her bowel and several lymph nodes, chemotherapy, and, eventually, a hernia repair. **(Count II)**

Plaintiff asserts that Corizon, Kapur and Bredeman acted with deliberate indifference in refusing to provide her with a timely colonoscopy, which could have prevented her pain and suffering, and they also acted with deliberate indifference in failing to diagnose and delaying treatment for her bowel obstruction. Further, plaintiff believes defendants acted pursuant to a

pattern or practice or custom, implemented by defendants, not to provide colonoscopies, in order "to keep down costs." Further, plaintiff asserts that defendants acted in accordance with a policy or practice not to transfer patients to outside facilities in order "to keep down costs," and in addition, failed to transfer plaintiff to a facility capable of dealing with plaintiff's health and medical issues. **(Counts I and II)**

After plaintiff's surgery to remove the tumor, she developed a hernia, which her surgeon noted needed open surgical repair in June of 2014. Despite numerous requests by plaintiff for surgical repair of the hernia, plaintiff did not undergo surgery until September 2015, at which time, despite her surgeon's recommendations, she was sent to a different doctor for outpatient laparoscopic hernia repair by defendant Doerhoff. Defendant Doerhoff informed plaintiff that he had agreed with CMS "not to admit any patients" for overnight visits in the hospital.

Plaintiff states that after defendant Doerhoff repaired her hernia laparoscopically, she continued to experience pain, dysfunction and tightness in the area of the hernia. Plaintiff states that she requested re-evaluation by a surgeon, however, defendants CMS, Bredeman, Jones and Hubert denied these requests. Plaintiff believes defendants have been deliberately indifferent to her serious health condition relating to her hernia repair, and she believes that defendants have acted in accordance with an unconstitutional pattern or practice of not allowing overnight stays in the hospital "to keep down costs." **(Count III)**

During plaintiff's chemotherapy treatment, between May 2014 and November 2014, plaintiff had difficulty maintaining her white blood cell count. Oncologists often prescribe white cell growth stimulators to help boost white blood cell counts in chemotherapy. Plaintiff first received a drug called Neulasta on June 11, 2014. Immediately, plaintiff's white blood cell count increased enough to begin another round of chemotherapy by June 17, 2014. Because the Neulasta seemed to work, her oncologist prescribed Neulasta prior to her next chemotherapy

appointment. However, after plaintiff's first Neulasta shot, CMS refused to provide Neulasta and instead substituted another drug called Granix. Plaintiff asserts that Granix did not work as well as Neulasta, and defendants knew this and did not want to put her back on the Neulasta due to the high cost of the drug and their unconstitutional policy and practice "to keep down costs." **(Count IV)**

Plaintiff claims that "four out of twelve cycles" of chemotherapy had to be delayed due to abnormal and variable blood counts. She claims that every time her white blood cycles dropped too low, she had to be placed in isolation and placed on antibiotics, which negatively impacted her ability to fight infection with antibiotics in the future. Plaintiff believes defendants' actions in denying her the ability to use Neulasta constituted deliberate indifference to her serious medical needs. **(Count IV)**

Similarly, plaintiff believes that defendants' failure to allow her to wear a hat, scarf and gloves (provided by the doctor), was unconstitutional conduct in violation of her rights, given that she experienced cold intolerance in her extremities as a result of the chemotherapy.[1] In addition, despite defendants' knowledge that she was experiencing this cold intolerance, defendants failed to allow plaintiff additional heat during transport by opening the partition window in the transport vehicle. Plaintiff alleges that these actions were also violations of her 8th Amendment rights. According to plaintiff, these actions caused increased risk to plaintiff of permanent nerve damage to her extremities. **(Count V)**

Last, plaintiff states that defendants violated her rights when they failed to allow her timely surgical evaluation for removal of her ovaries. Plaintiff claims that in 2014, prior to her hernia repair, her outside physician informed her that she should have her ovaries removed due to an increased risk of ovarian cancer and advised that it would be riskier to remove the ovaries

---

[1] It appears that plaintiff also asked for, but was not given, a hat, gloves and scarf, by the prison authorities.

after the hernia surgery. Plaintiff claims that she requested, on several occasions, an evaluation by a surgeon, for removal of her ovaries. However, she has been denied these requests. Plaintiff claims that defendants are being deliberately indifferent to her serious medical needs by denying these requests, and are additionally acting in accordance with an unconstitutional policy or practice "to deny expensive care that is designed solely to prevent serious illness, disease and death in order to keep costs down." **(Count VI)**

Plaintiff also alleges the state law claims of negligence in this action, for all claims set forth herein. **(Count VII)**

The Court finds that plaintiff has stated a claim against defendants for Counts 1-7 in this action and will request that the Clerk of Court serve process on defendants or cause process to be issued by the U.S. Marshal. *See* 28 U.S.C. § 1915.

Accordingly,

**IT IS HEREBY ORDERED** that the Clerk shall issue process or cause process to be issued on all claims in plaintiff's first amended complaint in accordance with the Court's agreement with CMS.

                                                                             _____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 14th day of July, 2016.